Denka et al. And we will begin with Mr. Russell. Mr. Russell, you need to unmute. There you go. Can you hear me? Yes. Okay, thank you. Yes. My name is Danny Russell, Oregon on behalf of the appellant, Winnea Butler. For the first eight minutes, I'm going to address the subject matter jurisdiction issue, then I will yield the remainder of the time to my colleague, Mr. James McMichaels, who will address the state law issues. The appellant is requesting that this court vacate and overturn the district court's January 3rd 2019 order denying her motion for remand on the grounds that at the time of removal, the district court lacked original subject matter jurisdiction, because there is no constitutional basis then for original subject matter jurisdiction. As this court knows, and as it has reaffirmed along with the Supreme Court for years, two things are necessary to create original subject matter jurisdiction. Number one, there must be a constitutional basis for original subject matter jurisdiction. And number two, there must be a statutory basis. Therefore, even when the requirements of 1332A or 1332B D are met, if there's no constitutional basis under Article Three, then there is no original subject matter jurisdiction for removal of a case commenced in state court. As a title, I don't want to preclude any argument you want to make, but I'm gonna be honest with you because we have limited time. I don't really put a lot of stock in that argument. I have a lot more concerns about the merits of the case. So I'm going to turn to that. But obviously, my colleagues may have questions on the point you just made. I want to ask you about whether there is my question about this business of she knew she had these symptoms, and therefore her year started running is, how do these symptoms tell you you have the disease because of chloroprene? Is there any indication anywhere in this vast record that these symptoms definitely are caused by chloroprene the way that mesothelioma, for example, is, I think, 99% caused by asbestos? I think I will let Mr. McMichaels address that since he was handling that the state law issue. The state law issues. Okay. All right. Your Honor, should I? I'm really supposed to be speaking after Mr. Russell, would you like me to proceed now? Well, I'm not trying to I you know, I'm not trying to cut you off. And my my colleagues may have questions about the jurisdictional issue that Mr. Russell raised. But I personally don't think that's a very strong argument. And I wanted to get deep into the merits, but I'm not trying to change how y'all allocated this. So right. But you're on out there. I'll just remark at this point that there's a couple of points I'd like to point out. First of all, the symptoms that the class representative plaintiff when he suffered are consistent with those that have been identified in the governmental and medical literature as being caused by chloroplain. Second is that was not apparent to her at the time she had no way of knowing that the symptoms were caused by chloroplain. That's what I'm trying to understand. Did you know, because if you're a very heavy smoker, and you get lung cancer, you probably figure that's where it came from. But if you've never smoked, never been around anyone who did, and you get lung cancer, how do you know where it came from? So I mean, you have symptoms of something, and knowing where they came from, where is that link? There is no link in this case that she was not aware that her symptoms were caused by chloroplain or that she'd been exposed to chloroplain at all, much less exposed to chloroplain by the defendants in this case, you know, until much less than one year before filing suit. So with our point there being is that the mere fact that someone suffers symptoms does not mean that they will know that they were caused by some chemical, much less that that chemical, they were exposed to that chemical by any particular defendants. So the fact of symptoms occurring does not in itself in any way, cause someone to be put on notice so as to start the statute of limitations running or to use the Louisiana term prescription running. There's sort of, I guess there are two, a factual and a legal question I have, Judge Feldman, you remember in his order at footnote three, in the text accompanying it pointed out that as alleged in paragraph 24, the first sentence does start due to right, and therefore really suggest that as it was pled, it was no, not just should have known but was known. So that's that's just a pleading concern I share with the district court. But then legally, you rely heavily on wells. But I mean, this is a pretty standard test here. Do you have any case that's more in the emissions environmental context, because in well, it was the mineral servitude, and the Supreme Court highlighted that the defendants own neglect, right, not having given her payments by statute, really caused her ignorance. And I don't see that as alleged here. Your Honor, I think let's start with paragraph 24. Paragraph 24 does allege causation of symptoms by the chloroplane. But nowhere does paragraph 24 suggest anything at all about the plaintiff's knowledge, not a thing. That would be in effect in every petition in Louisiana or complaint in federal court for personal injury, there's going to be some allegation about the actions of the defendant about causation and about damages. But none of those allegations necessarily indicate when the plaintiff learned of the actions of the defendant learned that the damages were caused by the defendants or caused by chloroplane. In this case, if you're paragraph 24, it's very clear that there is an allegation that the plaintiff has suffered damages. And there is an allegation that the plaintiff's damages were caused by the defendants. But there's no allegation whatsoever, as to when the plaintiff learned of the damages being caused by the defendants. There is no allegation in paragraph 24, that the plaintiff knew as to when she knew when she learned that she had been exposed to chloroplane at all. That's where I want to understand, Mr. McMichael, is there any indication so you have this set of symptoms and you're going from doctor to doctor? Did any of them say have you been exposed to chloroprene? Because that could have caused this? I mean, is there any indication in the record that anyone at the relevant time tied it not now, obviously, when you're arguing causation, but at the relevant time, more than a year before suit tied the two together? The answer is no. And I'm going to give you two no answers, Your Honor. The first of all, of course, this is case was dismissed upon a 12 v six motions for failure to state a claim for the one by each defendant. And with respect to prescription stash limitations, that's DuPont and Department of Hospitals. All right. The important point here legally is is there an allegation about that in the petition or the that anybody put together the Ms. Butler symptoms and exposure to chloroprene or exposure to chloroprene by the defendants more than one year before she filed suit. And that's very important because as a 12 v six motion dismissal, only the pleadings are to be looked for, looked to. Now, to answer your question a second way, with respect to the record, more broadly, in fact, it was not put together at that time. The Ms. Butler symptoms were not linked to chloroprene until much, much later, much less than a year before the the suit was filed. Those are the actual facts. But sticking to the spits, legally speaking, sticking to the pleadings, the important point is there's no allegation that she put together the symptoms with the chloroprene more than a year before. Your Honor, my second question, what what case is more relevant more on point than Wells? Well, I don't not sure if I know that there's a case more on point or more relevant than Wells, Your Honor. There are undoubtedly there are cases in that are out there that might be dealing with emissions. What we're looking for was the law. I'm really just asking as to the discovery rule exception. I understand you're asking. And I'm asking but I'm really asking for a case in Louisiana that doesn't have that critical element highlighted in Wells of an if not a concealment, a deliberate nonpayment. So the lady there didn't know. Well, Your Honor, I'm afraid I have to, I'm going to have to elaborate upon the actual holding of Wells because that wasn't the theory legal theory applied in Wells. If you read Wells in its entirety, including which we've quoted in part in our brief, Wells identifies four situations, not one but four situations which contra non-valentum applies. One of those situations is when the defendant has either deliberately or otherwise switched actions concealed from the plaintiff right knowledge of the harm. That is not this is that was not the situation in Wells. The fourth situation. That's called the discovery rule. The fourth is the discovery. Right. And the fourth, yes. And the fourth situation, and this is very important, Your Honor, if you look into Wells, it very The fourth situation is a situation in which the defendant has not done anything to conceal the facts from the plaintiff, either deliberately or through neglect. You know, the fourth situation is actually the most common situation. The defendant hasn't done anything except perhaps commit the tort. The defendant didn't even know about the plaintiff. So the defendant didn't do anything to try to conceal the facts. But Wells involves that fourth situation. I call it the plain vanilla discovery rule, making up something on the spur of the moment, as opposed to the concealment by the defendant, either through neglect or willfully, which is a different situation, not addressed in Wells. Wells was the pure plaintiff didn't know plaintiff didn't should not have known no fault of the defendant with respect to discovery or nondiscovery. And that's the situation that you know, alleged here. Now we do have some allegations in the brief, that that some of the defendants deliberately all in fact, in fact, deliberately some more than others set out to conceal from the plaintiff to conceal from the people who lived in the vicinity of the Pontchartrain works facility, the harmful nature of chloroprene and the harmful nature of the of the emissions. In fact, there were a flat out lies. Just because your time's tight. I'm wondering, as to DuPont, I mean, none of this prescription argument is relevant as to Anka, but as to DuPont, would we not be reaching prescription on any way? If your custodial liability theory is sound? Am I right about that? That Yes, that would be one point is if on the 23, strict liability 2317. So long as DuPont continues to have custody or to use the more proper French term guard over the facility as a whole, including the the sources of the emissions, which are part of the part of the facility, it's a continuing tort. So you wouldn't reach prescription against DuPont, just as you wouldn't reach prescription against Dinka, because of the continuing tort nature, ongoing nature. And you're just my last question for me, your best case as to guard against DuPont, as retained interest in the What's your best case that extends to that constellation of allegations? Okay, what this is one point where your honor where I'd like to, I'm going to fall back on two things, rule eight, plain and simple statement requirement, as of course, modified by Iqbal Twombly, but also the rules that were allowed discovery, we do not have the details of exactly what is going on in the punch train works facility. Obviously, there wasn't any discovery had. Now, these are the facts which you know, which I think lead we do know, which can lead to inquiry reasonable inquiries and inferences, inferences now inquiries later, to where we've got to the point where we can withstand a motion for summary judgment. DuPont did not sell the punch train where it works facility to Dinka, obviously, DuPont still owns the facility as a whole, all the land still belongs to DuPont, all the buildings still belong to DuPont and DuPont continues to carry out its own manufacturing operations there at the punch train works facility. Now, what exactly did DuPont sell to Dinka? That's not really known because we don't have the contract of sale. And, you know, and we don't know what involvement DuPont still has with neoprene at the plant. It is hard to believe that DuPont would give to Dinka unfettered discretion, carte blanche, to use DuPont's punch train works facility to do anything at all, no matter how dangerous. In other words, it would seem a over what Dinka is doing on DuPont's property on DuPont's land in DuPont's buildings. You know, it's, you know, there's got to be some sort of authority that DuPont continues to exercise over its activities, including possibly dangerous activities on its own property. You know, that would be it would be extraordinarily foolish. And I don't even know if it'd be legally effective to simply say, we're delegating to Dinka unfettered authority to do whatever it wants on our property, no matter how dangerous. So I think that, you know, in terms of guard, there is certainly a reasonable inference to be drawn that DuPont has guard over everything at the punch train works facility, including what Dinka is doing. And here, it's a very important point to keep in mind that more than one party can have guard over the same thing simultaneously. Your time is expired. And I apologize, Mr. Russell, I did not mean to cut you off. I just was trying to get to the point that I wanted to ask about. So I apologize to you. I'll give you one minute if you have anything you want to say that you didn't get to say because of that. So yes, Your Honor, and just I'll make it real quickly. The plan, the appellant argues here that I know we were just talking about the ruling, the rule 12. B six rulings. But the first thing that the court had to address was subject matter jurisdiction. And if it if it didn't have subject matter jurisdiction, it had no authority to act whatsoever, even to rule on his rule 12. B six motions. And aside from not falling under one of those cases, that original jurisdiction is extended to under Article three, original jurisdiction at the time of removal was bored by the state agency defendants 11th Amendment immunities from suit against them in federal court. The Supreme Court in its cases has said for over 100 years, we've reaffirmed that that when that that no suit may be brought in federal court against the state court state agencies by its own private citizens. Okay. All right. Thank you. I appreciate it. Mr. Russell, Mr. McMichael. All right, we will now turn to the appellees and we'll begin with Mr. Weidenhammer for DuPont. Your Honor. May please the court. My name is Brad Weidenhammer arguing on behalf of defendant appellee EI DuPont Dana Morrison Company. I'd like to begin by addressing the issue of prescription and get pretty quickly to the question, which is an important one that Judge Haynes raised. But just to set the groundwork, plaintiffs claims, as you know, are subject to a one year prescriptive period. And the plaintiff here in paragraph 24 of her first amended complaint, alleges that she began suffering from 20 plus physical ailments beginning in 2012. And since that time, she's continuously received medical treatment for those illnesses. Okay, but here's my problem with that. You know, I'll just use an example. Fran Drescher, the actress had a bunch of symptoms for two years, she went to nine different doctors before she was diagnosed with uterine cancer. So the fact that she knew she had symptoms, and she obviously had the money to go to great doctors, she still didn't get diagnosed for two years. So I'm having trouble understanding why knowing I have a headache means I know I have x versus y versus z. And then that I know that that disease was caused by DuPont. I think the answer, Your Honor, most clearly is is contained in the holdings of the Tenorio and the Lenny and the Guerin cases that we cite all from the Louisiana appellate courts. And each of those cases involved plaintiffs who had been unwittingly exposed to toxic substances or radiation. And years later, years after that exposure, were diagnosed with cancer, had no idea what might have caused it had no idea that they had been exposed to any toxic substance that could have caused it. But what the courts held in each one of those in those cases is that the manifestation of the of the illness of the injury, the diagnosis, triggers a duty to it's not enough to say I was diagnosed and I didn't have any basis or understanding of what in my friend dress your hypo if you will, would her one year start when she had the symptoms and went to Dr. Number one, or when she was diagnosed with uterine cancer two years later, because I don't know that we know what Ms. Butler has been diagnosed with. Well, what Ms. Butler alleges is that she's been diagnosed with and treated for the symptoms that she lists the ailments and it's okay. But that's not a diagnosis. If I have a headache and somebody gives me aspirin, that doesn't tell me what illness I have. It just maybe makes me feel better. But with Miss Drescher, she was getting you know, I'm sure medicines and this and that. But we didn't have a diagnosis for two years. So I'm if the point is that a diagnosis of cancer makes you have to run around finding out how you got the cancer. We don't even have that here. So I'm to me treating symptoms, giving me aspirin for my headache doesn't answer the question of how I got it. Or even even give me a diagnosis. Maybe I have brain cancer. Maybe I just got tired of my own questions and gave me a well diagnosis is not the critical fact for purposes of under Louisiana law. And if you go back to just the plain language of the prescription statute, which is article 3492 it says that prescription runs from the day of the injury or damage. And so in when in cases of latent disease, cellular level diseases like cancer, there's no basis to know that you have an injury, you're not on notice of any injury at all But in an instance like Ms. Butler alleges she had over injuries that were so severe that she sought continuously sought medical treatment for those different injuries and illnesses since 2012. And under the plain language of the statute that's required. Even in the Tenorio and Lenny and Guerin cases, the rule that the court cite and apply is not that prescription runs from the date of a diagnosis. It's that date of a manifest injury. As soon as you know you've got an injury, that puts you on constructive notice and requires you imposes a duty to go out and investigate. And so what should have happened here and didn't is that Ms. Butler should have talked to her doctor should have talked to others about the potential causes of this constellation of illnesses and bear in mind, Ms. Butler doesn't allege that she had one of these symptoms. She alleges that she had over 20 symptoms continually since that square with the argument that they haven't really alleged chloroprene cause this. How can you say it's so obvious, man, every everybody should have known this was chloroprene back when you had a headache or the 20 symptoms, but also argue at chloroprene doesn't really cause this, we don't have enough emissions to really cause any harm. How can you square those? I mean, it seems to be putting the pen seems to be on her head rather than anywhere else. We obviously dispute that chloroprene cause any of her symptoms. But the question for purposes of prescription is when the plaintiff could have discovered the facts that she uses to allege her claim. And the facts that she cites to allege her claim, were all apparent in the record, the EPA had published various reports, which she specifically cites in her complaint, specifically linking this constellation of symptoms to chloroprene. And she alleges that that was available in 2015. She also alleges that other members of the community, well, well within the 2015 and 2016 period, had put the dots together, we're actually having community meetings with local public health officials to discuss the potential health effects of chloroprene. And the key here is that the burden is on Ms. Butler to prove that she couldn't have found those facts within this isn't at the proof stage yet. This is just at the pleading stage. The proof matters for purposes of the pleading stage because the plaintiff, having filed a suit well beyond the one year prescriptive period, then has the burden to plead and prove contra non volentia. And the plaintiff hasn't done that here. She hasn't alleged that she conducted any inquiry whatsoever, let alone a reasonable one. She has not alleged that there was any impediment to her locating the same facts that she cites in her complaint, way back in 2015, or even earlier. Because she cites EPA information, even from 2010 that talked about the health effects of chloroprene. And she cites reports that specifically link chloroprene from the neoprene facility to supposedly increased cancer risk in her community. Okay, Judge Haynes, I did have a few questions for Mr. Weidenhammer, but I didn't get a chance. May I ask several on prescription and one on another point? Go ahead. Absolutely. Okay, three questions on this prescription line. Could you speak to Wells? And then could you tell me whether you draw any significance as the district judge did from the due to construction of paragraph 24? And lastly, I didn't see that the district court relied on the public disclosure as giving constructive notice. But your brief has Am I correct that Judge Feldman didn't point to that? Those are my three questions about prescription. And then I'd love to hear if you could reach the custodial liability point. And my in my specific question and concern is what's the limiting principle? And I'm not suggesting this occurred here. But how would you assure me that the law doesn't allow for a corporate evasion, that it sells the land and the property, but then allows an internal production unit to continue to pollute? And therefore, doesn't that give control or direction if you have ownership interest as to everything supporting a polluting unit? Did you get all those points? I think it did. But I might have to ask for a reminder at some point. Yeah, let me begin. Let me begin by addressing the Wells case. I think it's an important question, because the planet relies pretty heavily on wells and says that wells essentially contradicts and in some sense, trumps the Tenorio Lenny and Guerin cases that we cite in line. That's actually not true. There's no tension whatsoever between the wells and the Tenorio line of cases. Because as you pointed out with the court's holding, was that the the plaintiff there and the plaintiff's mother, more accurately, had no notice whatsoever of an injury, because they had no idea that this land that they owned a small share in had been exploited for mineral rights and that they were even owed let alone hadn't been paid the royalties. And so that fits perfectly with the rule that's applied in Tenorio and Lenny and Guerin, which is that prescription begins to run from the moment you have a manifest injury, as soon as you know, you've got an injury, you have a duty to inquire and to find out whether you have the basis for a claim. And you've got a year to bring that claim. And that's exactly what the plaintiff does not allege that she did here. Okay, I appreciate that. Then just the language construction point, Judge Feldman highlighted, yet he didn't public disclosure. Right, so. So Judge Feldman, I think correctly, and gave the most natural reading to paragraph 24, which is that the plaintiff specifically alleges that all of the symptoms she began experiencing in 2012 were due to chloroform. And so the natural way to read that is that she's alleging that she knew as far back as 2012, that they were due to chloroform. Okay. And then maybe just to finish up the limiting principle on custodial liability, if Judge may I make one point of clarification on on that construction point, which is just that I do think it's important. And I think it's another basis to affirm the district court. But I think that the stronger basis or the cleaner basis is the constructive notice and duty to inquire point because the plaintiff does bear the burden or owe the owe the duty to inquire and didn't do so here. I'm sorry, the next question, Your Honor, it was just a limiting principle to this this concept of we don't know what the contract is. And yet DuPont owns the land in the building apparently as alleged. What do you what do you what's the case law that would reassure me that that that were indicate that that's definitely not guard or it could be guard? I think it would go back to to start at the fundamental principle of 12 v six and the Twombly Iqbal standard, which is that the onus is on the plaintiff to allege facts that plausibly support her claim. And in this case, in the case of guard, the plaintiff hasn't alleged any facts that suggests as Judge Goldman correctly found, no facts suggest any level of control, whether through ownership, or any other means. And it's not enough at this stage, even at the pleading stage, it is not enough to say, well, we don't know we could only speculate, but we have no idea whether DuPont might possibly have some unknown level of control over the neoprene facility. The fact of the matter is the plaintiff specifically alleges that DuPont sold the facility to Denka in 2015, and specifically alleges that since that time, Denka not DuPont has both owned and operated. So it's an Iqbal Twombly answer. Okay, thank you for and I appreciate the extra time, Judge Haynes. Thank you. All right, we will turn to the next counsel, Mr. McIntyre. Thank you, Your Honor, may it please the court. My name is Patrick McIntyre, representing the Louisiana Department of Environmental Quality. I'll be very brief on the issue of jurisdiction and just say that this case is indistinguishable from Frazier versus Pioneer Americas, and plaintiffs have not even addressed that case or attempted to distinguish it. With respect to DEQ, we didn't argue prescription issue. If the court has any questions for me in particular, about either the declaratory judgment argument that the plaintiffs are making right now or the claim for liability, I'd be happy to answer those. But just very briefly, the plaintiff is now saying that they didn't address declaratory judgment in opposition to our 12B6 motion, because we didn't raise it in the motion. We did, however, ask that the entire claim against DEQ be dismissed, the entire lawsuit. And then it was after we had made that request, the plaintiff filed a motion to submit a second amended complaint in which she omitted the declaratory judgment claim altogether. So she's now arguing to this court that Judge Feldman was incorrect for bringing for not addressing a claim that she had sought to dismiss before he ruled on our 12B6. That really doesn't make any sense. The declaratory judgment claim was abandoned in the court below. It was never addressed or raised by the plaintiffs. And it's being raised now for the first time on appeal before this court. With respect to the damages claim, of course, the briefing from the plaintiffs on that was really minimal. I mean, we've got about 10 pages of arguments about the Louisiana Constitution and Louisiana statutes and some Louisiana cases that deal with whether or not DEQ has a duty in court under Louisiana law to protect plaintiff from somebody else's pollution. And that she really has not addressed the merits of those arguments. Other than to say she's found that she argues that American Waste, the American Waste, is irrelevant. But that case by the Louisiana Supreme Court specifically found that DEQ determinations on regulatory matters are not civil matters under the Louisiana Constitution, which, you know, granted jurisdiction over civil matters to the Louisiana District Courts. It is a relevant decision. It is a part of our argument. It's only a small part there's Louisiana Constitution, public trust doctrine, the actions of legislature, and setting up an entire legislative scheme for appeals of Louisiana DEQ decision, etc. It is a relevant decision. Okay. Thank you, Mr. McIntyre. Thank you. We'll proceed on to our phone person, Mr. West. Good morning. Apologize for all of the technical problems. But anyway, I think for once I'm not the cause of it. But anyway, yes, I'm W.L. West, Special Assistant Attorney General, and representing Defendant Appellee, the Louisiana Department of Health. I think we've pretty much dealt with the subject matter jurisdictional issue other than to say that the presence of the state defendants in no way interfered with the District Court's jurisdiction under CAFA. At that point, the Department of Health did not originally join in the removal. But once it was removed, the Department of Health had the In which case, the claims against the Department of Health would have been severed and sent back to the state court, or the Department of Health could do what it did, which was explicitly waive its sovereign immunity as to this case. So that is, as far as the Department of Health is prescription, ruling in favor of the Department of Health. Our case is a little different. We don't I don't think we need to get to the contra-convalentum issue. Although I agree that it applies in this case. The allegations against the Department of Health is that in two specific instances, in Inadequately investigated the exposure of some school students in Reserve, Louisiana, and then failed to investigate that and failed to properly report its findings. And then, again, there is the meeting in 2016, headed by the EPA, at which meeting the against the Department of Health is that they inadequately and improperly failed to inform the public of the dangers of possible dangers of scorpion cream exposure. So based on the allegation, the scant allegations against LVH in the petition is clear that by June 2018, the claims, the delictual claims against the Department of Health had prescribed and therefore the trial court was correct when it granted LVH's a motion to dismiss. And your time is up. I'll give you one more minute to wrap up. I mean, one more sentence to wrap up. Okay, no, that was fine. I was gonna add something else that really was not essential. So we appreciate it. Mr. Weston, I'm sorry about these tech issues, but that's life in the new world. Okay, we will now turn to Mr. Percy. Good morning, James Percy, on behalf of the defendant, Apolli Danka performance elastomer. And obviously, we do not have as the court has already observed prescription issues. Ours deal more with the substance of the motion to dismiss. Can you sing? I mean, we would have to rule if we're going to affirm, we would have to support the notion that she should have known in 2012, this was chloroprene. While at the same time saying, but she hasn't really shown that this could have been chloroprene in a 12 v six. So can you please square those two? Well, I, Your Honor, I completely agree with what Mr. Weidenhammer has already indicated that the test with regard to their prescription issues, and that's, of course, not my client's issue. But the test for that is what has the plaintiff alleged? And is it prescribed on its face? And if not prescribed on its face, or if prescribed on its face? Does it apply with any exception? And that analysis is considered purely on the substance of what the plaintiff has alleged with regard to those facts. With regard to the substance, however, what the plaintiff and Mr. Weidenhammer has also pointed this out correctly, what the plaintiff did in both the first and first amending petition in the original petition, as well as in the second amending petition was referenced numerous documents, numerous other documents, which the court is permitted to consider. And the court did consider in the analysis of both the original first amending complaint, as well as the second amending complaint, including documents from the EPA, the documents from OSHA documents from NIOSH, the National Institute of Occupational Safety and Health documents from the Industrial Hygienists Association, all of which clearly indicate and the court and these are documents cited in the petitions by the plaintiff, all of these indicate that the symptoms judge that you have previously asked about, which are as you have accurately pointed out, merely symptoms, not personal injuries or disease processes, that those symptoms may in fact, be caused by some exposure to some level of chloroprene. However, all of those documents contradict any exposure and creation of those symptoms at the levels alleged by the plaintiffs. In this case, that is precisely one of the judges problems when you consider the information cited by the plaintiff in the petition. I guess the problem I have is again, we're at the 12 v six stage, you haven't had full discovery. So to me, if there is some indication that it could have been caused, why isn't that even if she didn't quite get the number doesn't quite know the number, but knows that you all have violated as she alleges your own safety provisions. And again, that allegation was made with no indication of what the internal actions or issues were that they are alluding to. But I mean, the problem is when you file your complaint as a plaintiff, you don't have the same information you're going to have when you walk into the jury trial. Now I understand you've got to make a plausible claim. I totally get that I've affirmed a lot of 12 v sixes. I understand the concept. But I also understand that every last little nitty detail that you might need to win a jury trial isn't going to be there on day one of the complaint or even day 105, or you know, 320 or whatever this is. Completely. Just tell me why we are going to hold her to that stiff of a of an argument when there is some indication chloroprene can cause these kinds of harms and cancer. And it's the plausibility standard that Judge Feldman relied on. And I will answer specifically with regard to this case. Again, it's the plaintiff that referenced all of these documents. Number one, number one, the difference between an incidentally, Your Honor, the plaintiff is also specifically alleged EPA has been monitoring at that site for exposures beyond the fence line of Dankers plant. Approximately since Danka has been operating, Danka has been monitoring the plaintiff specifically alleges the result of that monitoring. So the plaintiff knows exactly what the exposures are beyond the fence line. That's number one. So that information is alleged by the plaintiff. Number two, with regard to what chloroprene can cause, the plaintiff also alleged that when referencing all of those documents, and here's the disparity. And this is what troubled Judge Feldman, and I believe should trouble this court as well. As far as plausibility, all of those documents indicate number one, with regard to those symptoms, thousands of times greater exposures than those alleged by the plaintiffs in this case would be required to demonstrate even remotely symptoms. chloroprene has been studied for years. This plant has been an operation, Your Honor, since 1969. It's been studied. That's why occupational health and we're talking about exposures to workers who are right there on the site dealing with this substance. That is what is problematic with this. The plaintiff alleged all of this and cannot make the plausible case. And in fact, the case that the plaintiff alleges is contradicted by the very things that the plaintiff cites in their petition. I'd like to move on to two other issues very quickly, Your Honor, because we believe and we've suggested in brief that this case really can be decided beyond the substance of the various issues on the merits. Number one, Judge Feldman, Denka moved to dismiss the second amending complaint because it was filed untimely. Judge Feldman issued his order and reasons and spent five pages demonstrating number one, why this was clearly untimely the second amending complaint, and why the plaintiff had failed to demonstrate any exclusive excusable neglect. And then at the conclusion of those order and reasons, Judge Feldman said, for the reason the foregoing reasons, the motion to dismiss is granted and the plaintiff, I believe, has dismissed with prejudice. They have not appealed, and they have not raised on appeal as an issue in this matter, the judge's ruling on the untimeliness and the dismissal based upon untimeliness. The only thing they have said in their reply brief was the judge never dismissed on untimeliness. Well, that is absolutely refuted by the judge's five pages of reasons, saying that dismissal is warranted and then dismissing at the conclusion for all of the foregoing reasons. And then the second matter that takes care or should take care of the second amending complaint should not be before the court because it was dismissed as untimely and that issue is not before the court on appeal. But secondly, with regard to the first amending complaint, what the law is and has been stated in the Fifth Circuit, that if you file an amending complaint, that completely replaces and renders the original complaint of no legal effect. That's precisely what happened here. And what we're dealing with is a second amending complaint, which completely restates the original complaint. Plaintiff has suggested that all they had to do was reference in the second amending complaint that there was an original complaint. We suggest that's not the law of the Fifth Circuit. The law of the Fifth Circuit clearly is the reference that they're talking about in the subsequent complaint has to be a reference to an adoption of allegations in the original complaint. Otherwise, the original complaint is time has expired, Mr. Percy, so I'll give you a sentence to wrap up. I'll be happy to answer any questions the court might have your honor. Okay, I don't see any. So thank you, Mr. Percy. Now, return to Mr. McMichael for rebuttal. Thank you. First, Tenorio, Linny and Guerin, the three cases referred to by DuPont's counsel and discussed in DuPont's and Department of Health briefs. The statement was made by DuPont's counsel that those three cases did not depend upon there having been a diagnosis of cancer. That statement is incorrect. And I can tell you three reasons why. First, if you read the three decisions, you'll see all three of those cases, the decisions hung squarely on the fact that there had in fact been a diagnosis of cancer. There's been no diagnosis of cancer here has been no diagnosis at all. Most importantly, there's no diagnosis alleged in the complaint. This is a 12 v six motion. I would also like to refer the court to page 23 of DuPont's brief. We're quoting it three recent cases from the Department of Health. So in DuPont's brief filed by Mr. Widenhier's, signed by Mr. Widenhier's colleague, they do say those three decisions were based on diagnoses. Also, if we look at the Department of Health, remember Department of Health is the other... So to be clear, in my friend Drescher, it's not a hypo that really happened to her. You would start out with a diagnosis running when she was diagnosed with uterine cancer and not when she first went to the doctor with symptoms. Actually, I would not, Your Honor. That actually goes to the tension between Wells and these three decisions. But that's the earliest she would start it. That is the earliest that yes, that is the earliest the tenorio linea. Where I would start was once she had the diagnosis. Okay. Your client doesn't have here. And Ms. Drescher got after two years. Right. Yes. And she wrote a book on it. So I'm not talking about anything that's secret. Okay. All right. The other thing I was gonna say is if you look at the Department of Health's brief at page 20, it says, quote, medical diagnosis triggers the duty to inquire as to possible causes of those issues, citing those same three cases. So the three cases themselves by their own terms are based on diagnosis. The briefs of DuPont and Department of Health both say diagnosis as well. In any case, I would say that three cases are contrary to Wells. Okay. How do you respond to this notion that you have buckets and buckets of documents that you've referenced and none of them show that the chloroprene from this facility was too high a number that could have caused any of the symptoms, diagnosis, cancer or anything else for your client? It's nonsense. If we look at the allegations of the petition and the Second Amendment petition, which was not dismissed for untimeliness, it was dismissed on the merits. The petition, the pleadings are replete with allegations of the harmful nature of this level of chloroprene exposure and that, in fact, there was harm. There are extensive allegations that these levels of chloroprene exposure are dangerous. And let's look at another thing, too. We don't actually have to have a single actual harm here under Louisiana law. It may be that no one will ever get cancer and we still have a cause of action. A point that DINCA has consistently ignored and that we have briefed in our brief with a whole string side of Louisiana cases is that in Louisiana, if the plaintiff has been tortiously exposed to carcinogens by the defendant, then the plaintiff has actions to recover mind damages for increased risk of cancer, for reasonable fear of cancer and for medical monitoring for cancer, all of which claims predate any actual cancer and those claims exist even if no cancer ever does develop. So, you know, at the very least, I mean, we could get by with simply the risk allegation. There's no doubt that the chloroprene exposure here has been alleged to create this risk. So, that's a very important point that under Louisiana law, unlike some other states, increased risk of cancer, fear of cancer, and medical monitoring for cancer are cognizable causes of action. Now, I'd like to, probably I'm out of time, and I would like to say one last thing on subject matter jurisdiction, two last things. First of all, the state defendants did not attempt to consent or waive the eleventh amendment immunity until after removal, and the relevant jurisdictional facts under the law are to be determined at the time of removal. So, the waiver would have had to have occurred before the removal, not afterwards. The second point is that the ruling in Frazier, and also in a case in Wisconsin, but the that ruling related to the affirmative defense of eleventh amendment, excuse me, to the merits, to an affirmative defense of eleventh amendment immunity. Again, I'll give you one sentence, time's up. And they're just saying, yes, Frazier related to an affirmative defense, not the subject matter jurisdiction. Okay. All right. Thank you, counsel. Appreciate everyone working through all the pathway. We appreciate the arguments. The case is now under submission, and Ms. Trice, you can let everyone go.